Dear District Attorney, Mark Campbell,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 May a school district's board of education approve a cooperative agreement with two other school districts and the Oklahoma Department of Human Services ("DHS"), if DHS intends to assign an existing employee, who is a spouse of one of the school board members, to perform the services required under the agreement?
¶ 1 In the situation underlying your question, three school districts propose to enter into a cooperative agreement with the Oklahoma Department of Human Services ("DHS"), a state agency. The DHS, at its own discretion, plans to assign an existing employee who is also the spouse of one of the school board members to perform its service obligations under the agreement.[1] Specifically, you are concerned that 70 O.S. 2001, § 5-113.1[70-5-113.1](A) would be violated. Section 5-113.1(A), in pertinent part, provides:
 [N]o person may be employed or put under contract by a school district if that person is related to a member of the board of education of that school district within the second degree of consanguinity or affinity.
Id. (emphasis added). Although the spouse would be within the prohibited second degree of consanguinity or affinity, the spouse is an employee of DHS rather than an employee or contractor of the member's school district. Because DHS is a state agency,[2] it would be a distinct, separate employer from the school districts, and 70 O.S. 2001, § 5-113.1[70-5-113.1](A) would not be violated.
¶ 2 Oklahoma school statutes also prohibit school boards from making certain contracts. Germane here is the following:
 A. Except as otherwise provided in this section, no board of education of any school district in this state shall make any contract with any of its members or with any company, individual or business concern
in which any of its members shall be directly or indirectly interested. All contracts made in violation of this section shall be wholly void. A member of a board of education shall be considered to be interested in any contract made with any company, individual, or any business concern if the member of the board of education or any member of the immediate family of the member owns any substantial interest in same.
70 O.S. 2001, § 5-124[70-5-124] (emphasis added). The DHS, as a state agency, is not a "company" or "individual." However, assuming for the limited purposes of this statute that DHS is a "business concern," the statute further clarifies that:
 D. A board member shall not be considered to be directly or indirectly interested in any contract with a company, individual, or business concern that employs such board member or the spouse of the board member if the board member or the spouse of the board member has an interest of five percent (5%) or less
in the company, individual, or business concern.
Id. (emphasis added). There is no private ownership of any interest in DHS; rather, the people of Oklahoma created DHS in 1936 by adopting State Question No. 225, and assigned DHS public duties.[3] As a matter of law, neither a school board member nor the member's spouse can own any interest in DHS; therefore, the school board member is not considered, under the statute, to be directly or indirectly interested in the cooperative agreement with DHS. See id. § 5-124(A), (D).
¶ 3 Oklahoma's public finance statutes impose similar limitations on the power of a school district to enter into a contract, including the following, in pertinent part:
 A. [N]o board of county commissioners, nor city council, nor board of trustees of any town, nor any district board of any school district in this state, nor any board of any local subdivision of this state shall make any contract with any of its members, or in which any of its members shall be directly or indirectly interested. All contracts made in violation of this section shall be wholly void.
62 O.S. 2001, § 371[62-371] (emphasis added). The statute further provides:
 F. A member of a board of county commissioners, city council, board of trustees of any town, district board of any school district in this state, or of any board of any local subdivision of this state shall not be considered to be directly or indirectly interested in any contract with a person or entity
that employs such member or the spouse of the member, if the member or the spouse of the member has an interest in the employing entity of five percent (5%) or less.
Id. (emphasis added). Within this statute, DHS would ostensibly be an "entity." As a matter of law, neither the school board member nor the spouse can own any "interest" of the employing entity (DHS) since it is a state agency. Because there is no ownership interest, the board member is not considered under the statute to be "directly or indirectly interested" in the cooperative agreement with DHS. 62 O.S. 2001, § 371[62-371](A), (F).
¶ 4 Therefore, approval of the cooperative agreement with DHS by the school board would not violate 70 O.S. 2001, § 5-124[70-5-124](A), (D), or 62 O.S. 2001, § 371[62-371](A), (F), because the board member would not have a statutorily defined "direct or indirect interest."
¶ 5 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. A school district's board of education may approve a cooperative agreement with two other school districts and the Oklahoma Department of Human Services ("DHS"), even if DHS intends to assign an existing employee, who is also the spouse of a school board member, to perform the services required under the agreement. The agreement will not violate 70 O.S. 2001, § 5-113.1(A), because DHS as a state agency is a distinct, separate employer from the school districts.
 2. Neither a school board member nor the spouse of a school board member can have an ownership interest in DHS. The school board member therefore would not have a statutorily defined "direct or indirect interest" in a cooperative agreement with DHS, and the school board may approve the agreement without violating 70 O.S. 2001, § 5-124(A), (D) or 62 O.S. 2001, § 371(A), (F).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 JOHN CRITTENDEN Assistant Attorney General
[1] This Opinion deals only with the situation presented. There may be other conditions which might give rise to a disqualifying conflict of interest, such as a spouse hired or given a pay raise to perform the services, or a sham arrangement, which are not addressed in this analysis.
[2] See Okla. Const. art. XXV, §§ 1-4; 56 O.S. 2001, §§161-162.1[56-161-162.1].
[3] See note 2.